NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TIMOTHY W. SIMMONS, | : | **CIV. ACTION NO. 17-2526 (JMV)** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| | : | |
| ROXBURY POLICE DEP'T *et al.*, | : | |
| | : | |
| Defendants. | : | |

**VAZQUEZ**, U.S. District Judge

This matter comes before the Court upon the filing of a prisoner civil rights complaint under 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA"), and the New Jersey Tort Claims Act ("NJTCA") by Plaintiff Timothy W. Simmons.  (Compl., ECF No. 1)  Plaintiff is a prisoner confined in Southern State Correctional Facility, in Delmont, New Jersey.  (*Id.*)  He brings this civil action seeking damages and injunctive relief for alleged constitutional violations that occurred during his 2015 arrest and subsequent prosecution.  (*Id.*)

I.      DISCUSSION

A.      <u>Sua Sponte Dismissal</u>

Under 28 U.S.C. § 1915(e)(2)(B), district courts must review complaints filed by persons proceeding *in forma pauperis* in civil actions, and dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.[1]  A pleading must contain a "short and plain statement of the

---

[1] The Court must also review a prisoner's complaint for dismissal under 28 U.S.C. § 1915A(b) if the prisoner "seeks redress from a governmental entity or officer or employee of a governmental entity."

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556.)

"[A] court must accept as true all of the allegations contained in a complaint[.]" *Id.* Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

Courts must liberally construe pleadings that are filed pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Thus, "a *pro se* complaint, however inartfully pleaded, must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (internal quotation marks omitted). "Court personnel reviewing pro se pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, *Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se*

*Docket in the Southern District of New York*, 30 Fordham Urb. L.J. 305, 308 (2002)). "The Court

need not, however, credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *D'Agostino*

*v. CECOM RDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010).

    B.    <u>The Complaint</u>

    Plaintiff brings this civil action against the following persons: (1) employees of the

Roxbury Police Department (Chief James Simonetti, Detective Matthew Holland, Sergeant Dean

Adone, Detective Howell, Detective Manisa, Detective Xhudo, Lieutenant Marc Palanchi,

Sergeant Kevin Carroll, Patrolman Jake Field, Patrolman Thomas Denicola, Patrolman Eric

Weaver, Patrolman S. Weaver); (2) employees of the Morristown Police Department ([unnamed]

Chief, Corporal Krauss); (3) employees of Morris County Sheriff's Department (Sheriff Edward

Rochford, James Gannon, Commander Fluri, S.O. Sergeant Davidek, S.O. Cilurso, S.O. Perez,

S.O. McMahon, and Sergeant Dean Adone); (4) employees of Denville Police Department

([unnamed] Chief, and Patrolman Weldon); (5) employees of the Morris County Prosecutor's

Office (Bradford Seabury, T.F.O. Harrison Dillard, T.F.O. Sutphen, T.F.O. Boyko, Detective

Tracey, Detective Spence Osaigbovo);[2] (6) a Confidential Informant;[3] (7) employees of the

Office of the Public Defender: (Elizabeth A. Martin and Robert Gracia Montilus); and (8) a

Confidential Informant/Cooperating Witness. (ECF No. 1 at 3-8.) Plaintiff also names four

DEA Task Force Officers. (*Id.* at 8.) Each individual is sued in his/her official and individual

capacity.[4] (*Id.* at 8.) Plaintiff also sues the following entities: Roxbury Township Police

---

[2] The police department employees are collectively referred to as "the Police Defendants."

[3] Plaintiff refers to the law enforcement officers, the prosecutors, and the CI/CW as "Defendants 1-31."

[4] Suing a municipal employee in his official capacity is equivalent to suing the municipality. *See*

Department, Morris County Sheriff's Department, Denville Police Department, Morristown Police Department, Morris County Prosecutor's Office, and Office of the Public Defender.   (ECF No. 1, caption.)

Plaintiff states that the members of the DEA Task Force have been named "for Service of Process Only."   (ECF No. 1 at 8.)   A summons and complaint is served only on the defendants.[5] The Court construes Plaintiff's statement that the DEA Task Force members are named "for service of process only," to mean that Plaintiff does not intend to proceed with claims against them.   Moreover, Plaintiff does not make any plausible allegations of wrongdoing concerning the DEA Task Force members.   Therefore, the Court dismisses them from the Complaint without prejudice.

Plaintiff alleges the following facts[6] in support of his complaint.   In June 2015, Plaintiff was unlawfully entrapped and seized by the defendants in violation of his civil rights.   (ECF No. 1 at 9, ¶1.)   The Police Defendants and Morris County Prosecutor's Office used a confidential informant ("CI") to record phone conversations and make video recordings of Plaintiff.   (ECF No. 1 at 9, ¶3.)[7]   According to Plaintiff, the recordings were made without a warrant, without a

_Kentucky v. Graham_, 473 U.S. 159, 167 n. 14 (1985) ("[t]here is no longer a need to bring official-capacity actions against local government officials, for under _Monell, supra_, local government units can be sued directly for damages and injunctive or declaratory relief.").

[5] _See_ Federal Rule of Civil Procedure 4(a)(1)(B).

[6] The complaint is replete with legal conclusions unsupported by factual allegations.   As noted, the Court may not accept legal conclusions as true when determining whether Plaintiff states a claim upon which relief may be granted.   _Iqbal_, 556 U.S. at 678.

[7] Plaintiff alleges he is an "Aggrieved Person" under the New Jersey Wiretapping and Electronic Surveillance and Control Act, 2A:156A-1 _et. seq._ "Aggrieved person" under the act "means a person who was a party to any intercepted wire, electronic or oral communication or a person

reasonable articulable suspicion, without probable cause, and without prior judicial authorization. (*Id.*) The Defendants drew Plaintiff "into a scheme that caused [him] injury and harm also unlawfully entrapping the [him]." (*Id.*)

In June 2015, the Police Defendants, prosecutors and CI, using a battering ram, broke into Plaintiff's hotel room at the Holiday Inn in Roxbury, New Jersey. (*Id.*, ¶5.) They threw Plaintiff from the bed to the floor, kneed him in the back, and stepped on his face. (*Id.*, ¶5.) Plaintiff had been sleeping and showed no resistance. (*Id.*) Defendants "continued to unlawfully coerce Plaintiff by showing an unreasonable amount of force by unlawfully pointing guns at [him]." (*Id.*, ¶6.) They searched his room and his possessions without a warrant and did not find any illegal contraband. (*Id.*) Plaintiff alleges Bradford Seabury of the Morris County Prosecutor's Office, along with several other Defendants, acted outside his traditional prosecutorial role in executing a warrantless search and unlawful seizure. (ECF No. 1 at 9-10, ¶4.)

Defendants arrested Plaintiff without giving him Miranda warnings and "maliciously charged plaintiff with conspiracy and possession with the intent to distribute marijuana charges that were baseless and unfounded." (ECF No. 1 at 11, ¶7.) Plaintiff alleges "the Honorable Thomas J. Critchley J.S.C. threw out the plea/conviction" on December 6, 2016. (*Id.*)

Plaintiff alleges his public defenders, mishandled his criminal defense by:

> allowing plaintiff to be prosecuted on evidence that is illegally tainted by "the fruit of the poisonous tree" and the product of an illegal search and that plaintiffs attorneys from the Public Defenders Office and other Pool attorneys failed to defend plaintiff and were grossly negligent by not investigating the states evidence, refused to hold bail hearings, refused to keep defendant informed at several junctions, failed to hold probable cause hearings, refused to hold suppression hearings to determine if plaintiff's rights were being

---

against whom the interception was directed."   N.J.S.A. 2A:156A-2(k).

> violated, in which they actually were, vehemently denied plaintiff
> evidentiary hearings, denied plaintiff his complete discovery
> allowing the defendants to maliciously prosecute plaintiff.

(*Id.*, ¶8.)

Plaintiff seeks money damages and criminal prosecutions of the Defendants. (Compl., ECF No. 1 at 18.) Federal district courts, however, cannot initiate criminal prosecutions. *U.S. v. Santtini*, 963 F.2d 585, 595 (3d Cir. 1992) ("[a]s a general proposition, matters of law "enforcement" are within the power of the executive branch.") (citing *United States v. Russell*, 411 U.S. 423, 435 (1973) ("execution of the federal laws under our Constitution is confided primarily to the Executive Branch of the Government")). Thus, any claim for relief requesting criminal prosecutions is struck from the Complaint.

C.     Section 1983

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory ... subjects, or causes to
> be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994).

D.     NJCRA

6

The NJCRA provides, in pertinent part:

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief. The penalty provided in subsection e. of this section shall be applicable to a violation of this subsection.

N.J.S.A. 10:6–2(c).

In this district, courts have repeatedly interpreted the NJCRA as analogous to § 1983. *See Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443 (D.N.J. 2011) (collecting cases); *see Hedges v. Musco*, 204 F.3d 109, 121 n. 12 (3d Cir. 2000) (concluding that New Jersey's constitutional provision concerning unreasonable searches and seizures is interpreted analogously to the Fourth Amendment) (citing *Desilets v. Clearview Reg'l Bd. of Educ.*, 627 A.2d 667, 673 (N.J. Super. Ct. App. Div. 1993)).   Therefore, the Court considers Plaintiff's § 1983 and NJCRA claims together.

E.    Entity Defendants

Plaintiff named the following entities as defendants to his § 1983 and NJCRA claims, based on their involvement in his arrest and/or prosecution:   Roxbury Township Police Department, Morris County Sheriff's Department, Denville Police Department, Morristown Police Department, Morris County Prosecutor's Office, and Office of the Public Defender.   A city or county police department is not a proper party to a § 1983 action because police departments are "governmental sub-unit[s] that [are] not distinct from the municipality of which it is a part."   *Mikhaeil v. Santos*, 646 F. App'x 158, 163 (3d Cir. 2016) (per curiam).   Plaintiff also raised claims against the Morris County Sheriff's SERT[8] and K-9 Teams.   A specialized police unit is not a "person" that can be sued under § 1983.   *See Surine v. Edgcomb*, 479 F. App'x 405, 408 (3d Cir. 2012) (per curiam) ("SERT itself is not a 'person for purposes of section 1983 and thus may not be sued") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)).

As a result, the Court construes the allegations against the police departments as allegations against the local government bodies under which they fall:   Roxbury Township, Morris County, Township of Denville, and Town of Morristown.   The Court also construes the claims against the SERT and the K-9 Team as claims against Morris County.

A county prosecutor's office is a state agency, and is not a person amenable to suit under § 1983.   *Mikhaeil*, 646 F. App'x at 161 (citing *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 854–55 (3d Cir. 2014) (holding that New Jersey county prosecutor's offices are considered state agencies for § 1983 purposes when fulfilling their law enforcement and

---

[8] The Court assumes SERT stands for "Sheriffs Emergency Response Team."   *See Ruiz v. Morris County Sheriff's Dept.*, Civ. No. 05-1825(DRD), 2008 WL 2229851 (D.N.J. May 28, 2008) (describing SERT).

investigative—as opposed to administrative—roles).   The Court therefore dismisses the § 1983 and NJCRA claims against the Morris County Prosecutor's Office with prejudice.

Public Defenders, defense attorneys and the Public Defender's Office are not state actors for purposes of liability under § 1983.   *Vermont v. Brillon*, 556 U.S. 81, 91 (2009) ("the relationship between a defendant and the public defender representing him is identical to that existing between any other lawyer and client.   Unlike a prosecutor or the court, assigned counsel ordinarily is not considered a state actor") (citation and quotation omitted); *Jackson v. City of Erie Police Dep't*, 570 F. App'x. 112, 113 (3d Cir. 2014) (per curiam) ("private defense attorney cannot be construed as a person acting under the 'color of state law' within the meaning of § 1983") (citing *Polk Cty. v. Dodson*, 454 U.S. 312 317-25 (1981)).   The Court dismisses the § 1983 and NJCRA claims[9] against Elizabeth A. Martin, Robert Garcia Montilus and the Public Defender's Office with prejudice.

Plaintiff sued the CI.   Plaintiff has not alleged any plausible facts indicating that the CI was a state actor for purposes of § 1983.   Insofar as Plaintiff's claims against the CI arise out of the informant's pretrial activities, the claims are dismissed without prejudice.

Plaintiff also sues the CI in his role as a cooperating witness ("CW").   A trial witness has absolute immunity with respect to any claim based on the witness' testimony.   *Briscoe v. Lahue*, 460 U.S. 325, 345 (1983).   The Court dismisses the § 1983 and NJCRA claims against the CW with prejudice based on absolute witness immunity.

---

[9] Federal Law Count XII. State Law Counts XI, XII.

F.    Illegal Search and Seizure, False Arrest, False Imprisonment, and Malicious Prosecution Claims[10]

The Fourth Amendment is applicable to the States by the Fourteenth Amendment.    *Baker v. McCollan*, 443 U.S. 137, 142 (1979).    The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."    U.S. Const. amend. IV.    The elements of a § 1983 claim for unreasonable search and seizure are (1) actions of the police officers that constituted a search or seizure within the meaning of the Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding circumstances.    *Brower v. County of Inyo*, 489 U.S. 593, 597-99 (1989).    "Warrantless searches and seizures inside someone's home (or in this case, a hotel room) are presumptively unreasonable unless the occupants consent or probable cause and exigent circumstances exist to justify the intrusion."    *U.S. v. Coles*, 437 F.3d 361, 365-66 (3d Cir. 2006) (parenthetical in original) (citing *Steagald v. United States*, 451 U.S. 204, 211 (1981); *Payton v. New York*, 445 U.S. 573, 586 (1980)).

The same Fourth Amendment principles that govern a search warrant application govern authorization for a wiretap.    *U.S. v. Tehfe*, 722 F.2d 1114, 1118 (3d Cir. 1983).    For authorization, there must be probable cause to believe an individual committed or is about to commit a particular offense and that communications concerning that offense may be intercepted.    *Id.* (citing 18 U.S.C. § 2518(3) (1982); *see also* N.J.REV.STAT. 2A:156-10 (Supp.1983-84)); *see also* N.J.S.A. 2A:156A-1 to -37; *State v. Ates*, 217 N.J. 253, 273 (2014) ("the Wiretap Act is constitutional under

---

[10] Federal Law Counts I, III, VI, VII, VIII, IX; and State Law Counts I.a., I.b., I.c., 1.d., II.a., II.c., IV, V, VI and VII, IX, XI, XII.

both the federal and state constitutions.").   To be clear, the Court is referring to the standards for wiretapping a conversation between or among non-consenting persons.   Under New Jersey and federal law, one party to a conversation can voluntarily record the conversation without probable cause or first obtaining a warrant.

"To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause."   *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d Cir.1995); *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."   *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (citation omitted)).

To state a claim for false imprisonment under the Fourth Amendment, a plaintiff must allege facts indicating that (1) she was detained; and (2) the detention was unlawful.   *James*, 700 F.3d at 682-83.   Detention is unlawful, for purposes of a false imprisonment claim, if detention is without legal process.   *Wallace v. Kato*, 549 U.S. 384, 389 (2007).   "'[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.'"   *Gaskins v. 17 Officers*, Civ. Action No. 09-1982 (WJM), 2009 WL 4730189, at *5 (D.N.J. Dec. 4, 2009) (quoting *O'Conner v. City of Philadelphia*, 233 Fed. Appx. 161, 164 (3d Cir. 2007) (citations omitted).

The elements of a malicious prosecution claim under § 1983 are:

> (1) the defendants initiated a criminal proceeding;
>
> (2) the criminal proceeding ended in plaintiff's favor;
>
> (3) the proceeding was initiated without probable cause;
>
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
>
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

*Kossler v. Crisanti*, 564 F.3d 181, 186-87 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

a.     <u>Search and Seizure Claims</u>

The Court will permit the unlawful search and seizure claims to proceed against the Police Defendants based on Plaintiff's allegation that he was arrested in his hotel room without a warrant or exigent circumstances. *See Riley v. California*, 134 S.Ct. 2473, 2494 (2014) ("the exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case.")   The Court will also permit the unlawful search and seizure claims to proceed against the Police Defendants based on Plaintiff's allegations that there was no judicial authorization or probable cause for the wiretaps used to make phone and video recordings of Plaintiff and the CI.   Finally, the unlawful search claims may proceed against Bradford Seabury and Task Force Officers Harrison Dillard, Mr. Sutphen, and Mr. Boyko, and Detectives Tracey and Spence Osaigbovo because Plaintiff alleges they were involved in wiretapping Plaintiff without judicial authorization and in searching Plaintiff's hotel room without a warrant.   *See*

*Burns v. Reed*, 500 U.S. 478, 496 (1991) (prosecutorial function of giving legal advice to police is not entitled to absolute prosecutorial immunity).11

b.  False arrest and False Imprisonment Claims

Plaintiff alleges the defendants entrapped him, and Judge Critchley threw out his "plea/conviction."  "Entrapment occurs when a defendant who was not predisposed to commit the crime does so as a result of the government's inducement."  *United States v. Dennis*, 826 F.3d 683, 690 (3d Cir. 2016) (quoting *United States v. Jannotti*, 673 F.2d 578, 597 (3d Cir.) (en banc), *cert. denied*, 457 U.S. 1106 (1982)).  Entrapment, in itself, is not a cognizable constitutional claim, although it may violate an individual's substantive due process rights "if it is sufficiently outrageous in form."  *See Johnson v. Koehler*, 2015 WL 1470948 at *12, M.D. Pa. Mar. 31, 2015) (quoting *Brown v. Butler*, 1989 WL 24871 (E.D. Pa. 1989) (citing *United States v. Twigg*, 588 F.2d 373, 378–79 (3d Cir. 1978)).

Plaintiff's false arrest and false imprisonment claims are premised on the allegation that there was no probable cause to arrest Plaintiff for drug charges because he was entrapped and illegally recorded.  However, Plaintiff has not alleged any plausible facts in support of his allegation that he was entrapped.

Count IX charges "Fabrication of Evidence and the use of False and misleading Police Reports before a Grand Jury in Violation of 42 U.S.C. section 1983 4th and 14th Amendments." (ECF No. 1 at 13.)  Plaintiff has not specified who fabricated evidence, what misleading

---

11 As noted, the Court must accept the plausible factual allegations as true for purposes of screening.  The Court's analysis would be different, however, if there was in fact a warrant issued for Plaintiff, if the alleged wiretapping was due to one party's consent, or if the wiretap was the result of a proper warrant.

information was in the police reports, or what improper evidence was provided to the grand jury. For these reasons, the Court dismisses the false arrest and false imprisonment claims without prejudice. Plaintiff may amend the complaint to allege facts supporting his claims of entrapment, fabrication of evidence, and misleading police reports presented to the grand jury. Plaintiff should also clarify whether he was ultimately convicted on any charges arising out of the alleged entrapment or whether all charges were dropped or pleas/convictions were reversed.

c.     <u>Malicious Prosecution Claims</u>

Prosecutors are entitled to absolute immunity for "a decision to initiate a prosecution." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 421 (1976)). Absolute prosecutorial immunity does not apply when a prosecutor is not acting as "an officer of the court," but is instead engaged in investigative or administrative tasks." *Id.* at 342 (quoting *Imbler*, 555 U.S. at 431, n. 33.)

Prosecutor Bradford Seabury is entitled to absolute prosecutorial immunity for his decision to initiate a criminal proceeding, and the claim against him for initiating the prosecution is dismissed with prejudice. The malicious prosecution claims against the task force officers and detectives employed by the Morris County Prosecutor's Office are dismissed without prejudice because Plaintiff has not plausibly alleged how they were involved in the decision to institute criminal proceedings.

G.    <u>Excessive Force Claims</u>[12]

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989)). "How much force is permissible to effectuate an arrest . . . is determined based on the 'totality of the circumstances.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Some of the factors considered are the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Plaintiff alleges he was sleeping in his hotel room when "Defendants 1-31" used a battering ram to gain entry. (ECF No. 1 at 10, ¶¶5, 6.) Plaintiff alleges that the Defendants pulled him out of his bed, kneed him in the back, and stepped on his face while he showed no resistance; and pointed their guns at him, "ordering him to remain seized." (*Id.*) Although the Court makes no finding as to the veracity of Plaintiff's allegations, the Court must accept all plausible allegations as true for the purpose of screening the complaint. "[P]lausible does not mean 'probable' but it requires more than sheer possibility." *Iqbal*, 556 U.S. at 678. The Court does not find it plausible that 31 persons actually pulled him out of bed and committed the complained of acts. Plaintiff will have to provide plausible allegations as to the number of officers actually involved in pulling him out of bed, kneeing him, and stepping on his face. Moreover, Plaintiff has not asserted plausible facts demonstrating that the pointing of weapons, standing alone, was a violation

---

[12] Federal Law Counts II, XI; State Law Count IIb.

of his rights.   Moreover, the Court does not find it plausible that the employees of the prosecutor's office and CI (Defendants 24-31 in the complaint) pulled Plaintiff out of his bed, brought him to the floor and pointed guns at him.   The excessive force claims against the employees of the prosecutor's office and the CI are dismissed without prejudice.   If Plaintiff is claiming that an assistant prosecutor or the CI were actually involved in physically restraining him, Plaintiff must plausibly plead as much.

  H.  <u>Conspiracy Claim under 42 U.S.C. § 1985(3)</u>

  In Federal Law Count IV, Plaintiff alleges "conspiracy to deprive civil rights in violation of the Fourth and Fourteenth Amendments and the Equal Protection Clause."   A conspiracy claim arises under 42 U.S.C. § 1985, and subsection 3 is pertinent here.

> (3)   If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

  To state a claim under § 1985(3), "a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive . . . any person [from] the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."   *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1998) (quoting *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983)).

Plaintiff has not plausibly alleged how the defendants conspired with each other, what they conspired to do, that they were motivated by a racial or class-based animus, or who took action in furtherance of the conspiracy. Thus, Plaintiff has failed to state a claim under 42 U.S.C. § 1985(3). This claim is dismissed without prejudice.

I.     Denial of Procedural Due Process

In Federal Law Count V, Plaintiff alleges violation of his procedural due process rights. To state a § 1983 claim for deprivation of procedural due process, a plaintiff must demonstrate that (1) he was deprived of an individual interest included within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). Presumably, Plaintiff is alleging loss of his liberty interest based on his arrest and prosecution. Plaintiff, however, has not alleged what process he was denied. *See Washington v. Hanshaw*, 552 F. App'x 169, 174 (3d Cir. 2014) (finding that the plaintiff failed to state a procedural due process violation "without explaining what process he was owed and how that process was denied.")

In *Gerstein v. Pugh*, the U.S. Supreme Court held that States must provide pretrial detainees "a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." 420 U.S. 103, 114 (1975). "Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Id.* at 125.

Although the basis of Plaintiff's procedural due process claim is not clear, he alleged his defense attorneys waived a probable cause hearing. (ECF No. 1 at 11, ¶8.) It does not violate procedural due process for a defense attorney to waive a probable cause hearing. *See State v. Ingram*, 449 N.J. Super. 94, 105 n.6 (N.J. Super. Ct. App. Div. Mar. 1, 2017) (noting that it is common for defendants to waive the probable cause hearing). This claim is dismissed without prejudice for failure to state a claim.

J.     *Monell* Claims

In Federal Law Count X, Plaintiff alleges *Monell* claims against Roxbury Municipal Defendants "for condoning illegal patterns and practices in violation of the Fourth and Fourteenth Amendments." In Federal Law Count XIII, Plaintiff alleges *Monell* claims against the Morris County Prosecutor's Office, the Morris County Sheriff's S.E.R.T. and K-9 Team "for permitting the use of illegal patterns and practices of illegal search and seizure and excessive force in violation of the Fourth and Fourteenth Amendments[.]" The Court has also construed Plaintiff's claims against the police departments and prosecutor's office as *Monell* claims against Township of Denville, Town of Morristown, and Morris County.

To establish a *Monell* claim for municipal liability, a plaintiff must allege facts showing that an injury was inflicted by "execution of a government's policy or custom." *Santiago v. Warminster Tp.*, 629 F.3d 121, 135 (3d Cir. 2010) (quoting *Monell*, 436 U.S. at 694.) The complaint must contain plausible allegations that the policy was made by someone with policy making authority, describe what action was taken under the policy, and that the execution of the policy was the source of the plaintiff's injury. *Id.* (citations omitted). Plaintiff has not alleged any such facts. The *Monell* claims against the Roxbury Municipal Defendants, Morris County,

18

Township of Denville, and Town of Morristown are dismissed without prejudice for failure to state a claim.

K.     Supervisory Liability Claims

In Federal Law Count XII, Plaintiff alleges "failure to prevent and correct wrongs in violation of the Fourth and Fourteenth Amendments[.]"   The Court construes this claim as one of supervisory liability for unlawful search and seizure, excessive force, false arrest, false imprisonment and malicious prosecution under the Fourth and Fourteenth Amendments.   There is no respondeat superior liability under § 1983.   *Iqbal*, 556 U.S. at 676.   Therefore, to state a claim, a plaintiff must plead facts under one of the recognized theories of supervisory liability for § 1983 claims.

First, a plaintiff may state a claim by alleging that a supervisor directed others to violate the plaintiff's rights; that the employees who were directed to violate the plaintiff's rights did so; and that the supervisor "gave directions that the supervisor 'knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights.'"   *Santiago*, 629 F.3d at 130 (quoting *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir.1988)).   Plaintiff has not alleged sufficient facts under this theory to state a supervisory liability claim.

Second, a plaintiff may state a claim of supervisory liability under § 1983 where the defendant supervisor "implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of the unconstitutional conduct."   *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (citing *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001)).   Here, Plaintiff has not identified a

policy, practice or custom that was established and maintained by a supervisor that created an unreasonable risk of a constitutional violation on the part of the subordinate. The Court dismisses this claim without prejudice.

In Federal Law Count XIV, Plaintiff alleges "failure to adequately train and supervise police officers in violation of the Fourth and Fourteenth Amendments," and in State Law Count XV, Plaintiff alleges "failure to properly train and supervise police personnel." The Court will construe State Law Count XV as a claim under the NJCRA.[13]

Claims that a supervisor failed to train or supervise "are generally considered a subcategory of policy or practice liability." *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir.2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, —— U.S. ——, 135 S.Ct. 2042, 192 L.Ed.2d 78 (2015) (citing Rosalie Berger Levinson, *Who Will Supervise the Supervisors? Establishing Liability for Failure to Train, Supervise, or Discipline Subordinates in a Post–Iqbal/Connick World*, Harv. C.R.-C.L. L.Rev. 273, 280 (2012)). Thus, the plaintiff must allege facts suggesting that "the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Santiago*, 629 F.3d at 130; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) ("the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" but it will not suffice "to prove that an injury or accident could have been avoided if an officer had better or more training").

Plaintiff's federal and state constitutional claims of failure to train and supervise are entirely conclusory and are dismissed without prejudice for failure to state a claim.

---

[13] The Court will also construe a separate claim under the NJTCA.

L.       Fifth Amendment Claims

In Federal Law Count XV, Plaintiff alleges "failure to administer Miranda warnings and unlawful coercion in violation of the Fourth and Fourteenth Amendments."   In State Law Count III, Plaintiff alleges "violation of Due Process by unlawful coercion, unlawful implied consent, and official misconduct."   *Miranda* claims fall under the Fifth Amendment protection against compelled self-incrimination.   *Renda v. King*, 347 F.3d 550, 557-58 (3d Cir. 2003). "Questioning a plaintiff in custody without providing Miranda warnings is not a basis for a § 1983 claim as long as the plaintiff's statements are not used against her at trial."   *Id.* at 558-59 (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)).   Plaintiff has not alleged who coerced him, how, when or what statements were used against him at trial.   The Court dismisses these claims without prejudice for failure to state a claim.

M.       Substantive Due Process Claims

Under federal and state constitutional law, "if a constitutional claim is covered by a specific constitutional provision ... the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."   *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (internal quotation marks and citation omitted); *see also Rivkin v. Dover Twp. Rent Leveling Bd.*, 143 N.J. 352, 365 (1996) ("when a particular provision of the Bill of Rights "provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing th[e] claim") (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).   Plaintiff's unlawful coercion and unlawful implied consent claims appear to be based on the failure to provide *Miranda* warnings before questioning.   Therefore, Plaintiff must

21

bring the claim under the Fifth Amendment and its counterpart under the New Jersey Constitution. The Court dismisses these substantive due process claims with prejudice. Likewise, Plaintiff cannot assert his Fourth Amendment claims as a violation of substantive due process. If Plaintiff intended to raise entrapment as a substantive due process violation, his claim is conclusory and is denied without prejudice.

N.      Claims under the NJTCA[14]

Plaintiff's common law tort claims are governed by the NJTCA. The NJTCA states that "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J.S.A. 59:2–1(a). "A public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2–2(a). However, "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3–3.

The NJTCA provides that "[n]o action shall be brought against a public entity or public employee under [the NJTCA] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. § 59:8-3. The NJTCA requires a claimant to file a notice of claim. *Id.* at § 59:8-4. The notice must be signed and filed with the public entity within 90 days of the accrual of the cause of action. *Id.* at § 59:8-8. "The claimant shall be forever barred from recovering against a public entity or employee if ... [he] failed to file

---

[14] State Law Counts VIII, X [labeled in the complaint as "VX"]; XI, XII, XIII, XIV, XV, XVI, XVII, XVIII.

his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8-9." *Badalmente v. Monmouth County Prosecutor's Office*, Civ. Action No. 08-2501, 2011 WL 1898833, at *8 (D.N.J. May 17, 2011); *McDade v. Siazon*, 208 N.J. 463, 476 (2011); *see Velez v. City of Jersey City*, 180 N.J. 284, 294-95 (2004) (notice provisions of NJTCA apply to intentional torts by public employees); *see e.g. Bernstein v. State*, 411 N.J.Super. 316, 332 (N.J. Super Ct. App. Div. 2010) (tort of willful misconduct governed by provisions of NJTCA); *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006) (tort of civil conspiracy governed by NJTCA)

The Complaint does not indicate whether Plaintiff filed a notice of claim as to each of his tort claims under New Jersey law. Therefore, the Court dismisses Plaintiff's tort claims without prejudice. If Plaintiff complied with the NJTCA notice requirements, he may file an amended complaint including the facts related to his notice of tort claims.

III. CONCLUSION

For the reasons discussed above, the Fourth Amendment and NJCRA unlawful search and seizure claims (Federal Law Count I, State Law Counts I, II, IV, V) may proceed against the Police Defendants, Bradford Seabury, Task Force Officers Harrison Dillard, Mr. Sutphen, Mr. Boyko, and Detectives Tracey and Spence Osaigbovo, but the claims are dismissed without prejudice as to the CI; the Fourth Amendment and NJCRA excessive force claims are dismissed without prejudice; the Fourth Amendment and NJCRA malicious prosecution claims against Bradford Seabury are dismissed with prejudice, based on absolute prosecutorial immunity; the § 1983 and NJCRA claims against the Morris County Prosecutor's Office, Elizabeth A. Martin, Robert Garcia Montilus, the Public Defender's Office, and the CW are dismissed with prejudice; the Fourteenth

Amendment substantive due process claims are dismissed with prejudice, with the exception of Plaintiff's claim of entrapment, which is dismissed without prejudice; the Clerk of the Court shall terminate Defendants DEA Task Force Special Agent Gillespie, Officer Cardona, Officer Melendez, and Special Agent Gunther from this action; the relief request for initiation of criminal proceedings is dismissed; and the remainder of the claims in the Complaint are dismissed without prejudice.

An appropriate Order follows.

DATED: November 9, 2017

At Newark, New Jersey

<u>S/ JOHN MICHAEL VAZQUEZ</u>
JOHN MICHAEL VAZQUEZ
United States District Judge